UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MARY BETH KEATON**,            Case No. 1:10 CV 2771

    Plaintiff,                      Judge Donald C. Nugent

    v.                           REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                  Magistrate Judge James R. Knepp II

### Introduction

Plaintiff Mary Keaton seeks judicial review of Defendant Commissioner of Social Security's decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3).

This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

### Background

Plaintiff was 47 years old on the date of the ALJ's decision. (Tr. 29). She has a high school education and completed two years of college. (Tr. 135). She has past relevant work experience as an accounting clerk (sedentary, skilled). (Tr. 58-59, 131).

*Treatment History*

In early March 2007, Plaintiff presented to the Mental Health Services for Homeless Persons (MHS) complaining of fleeting suicidal thoughts and increasingly worsening depression. (Tr. 185). She reported she had just filed for bankruptcy and had recently lost her job because she was calling

in sick on account of the flu. (*Id.*). Plaintiff reported she had applied for unemployment income, but had not heard back about her application. (Tr. 186). She also reported that her significant other was physically abusive to her and that her future son-in-law, who has been in and out of jail, was also "very abusive" to her. (Tr. 185-86). Plaintiff reported that her daughter's fiancé had previously tried to choke her daughter. (Tr. 186). Plaintiff's mood was described as dysphoric and anxious and her affect was flat, but appropriate. (Tr. 187). Plaintiff reported she wanted to get her life back on track. (Tr. 188). Plaintiff admitted she was drinking six to twelve beers per week and the last time she had done so was three days earlier. (*Id.*). She was diagnosed with Major Depressive Disorder, Recurrent, Severe, with Psychotic Features; Anxiety Disorder and R/O Alcohol Abuse. (Tr. 190). She was instructed to follow up with Dr. Stansbrey at MHS to monitor her situation. (*Id.*).

In early 2007, Plaintiff saw psychiatrist R. Stansbrey at MHS for an office visit. (Tr. 193). Plaintiff reported a slight benefit from medication and a continued depressed mood. (*Id.*). She also admitted she had drinking episodes. (*Id.*). Dr. Stansbrey noted Plaintiff's reports that she was drinking six beers per day. (Tr. 194). But he noted that she did not demonstrate any imminent risk. (Tr. 193). Her affect was neutral. (*Id.*). Her thought processes were organized and goal-directed. (*Id.*). She demonstrated no delusions or paranoia. (*Id.*). Dr. Stansbrey adjusted Plaintiff's medication regimen. (*Id.*).

Later in April 2007, Plaintiff presented to the Center for Families and Children for a mental health assessment, where she was referred for a follow-up subsequent to her complaints of fleeting suicidal thoughts in early March 2007. (Tr. 275-84). Plaintiff reported she started drinking at age fifteen and she currently drank five to six beers three times per week. (Tr. 276). She was noted to abuse alcohol/drugs, and further assessment of her drinking was recommended. (Tr. 276, 281).

Plaintiff reported current stressors of losing her job in February 2007, her home of 30 years was in foreclosure, and she had filed for bankruptcy. (Tr. 278, 280). Plaintiff reported her symptoms were worse since February 2007 when she lost her new job and had to file for bankruptcy. (Tr. 280). On mental examination, she was observed to be fully oriented, had a depressed and anxious mood, but was cooperative; her affect was appropriate; and her attention, articulation, and vocabulary were good. (Tr. 282). She reported hearing a voice for the last six months, but presented as calm, with normal speech, and was friendly. (*Id.*). Her recent and remote memory was also noted as good. (*Id.*). Plaintiff was diagnosed with Major Depressive Disorder, recurrent; and alcohol abuse. (Tr. 284). She was noted as having occupational problems (lost job), housing problems (home in foreclosure), economic problems (no income), and problems with access to health care services (no health insurance). (*Id.*).

In May 2007, Plaintiff saw Dr. Stansbrey for a follow-up. (Tr. 191). Dr. Stansbrey noted Plaintiff said she derived some benefit from her medications and had cut back on alcohol abuse significantly. (*Id.*).

Later in May 2007, Plaintiff underwent an initial psychiatric evaluation with Lisa Lambert, M.D., at the Center for Families and Children. (Tr. 270-74). Plaintiff reported she obtained a job in December 2006, but was fired shortly thereafter secondary to illness. (Tr. 270). She also reported her current significant other had beaten her up, her house was in foreclosure, she was filing for bankruptcy, and her future son-in-law was physically abusive to her on at least one occasion. (*Id.*). As for her drug and alcohol history, Plaintiff reported that three days prior she drank six beers. (*Id.*). She had also been drinking two days prior. (*Id.*). Plaintiff reported drinking a six pack of beer, three times per week, and also reported that she used to drink twelve to fourteen beers at a time. (Tr. 270-

3

71). She did not believe she had a drinking problem. (Tr. 271).

Plaintiff reported she currently felt rage, was angry, irritable, and very depressed. (Tr. 273). She indicated it was hard for her to fall asleep and she had poor concentration, paranoia, and auditory hallucinations. (*Id.*). Dr. Lambert assessed the following diagnoses: Major Depressive Disorder, with Psychotic Features; rule out Bi-Polar Disorder; and rule out Alcohol Abuse and Alcohol Dependence. (*Id.*). Dr. Lambert assessed Plaintiff as having a Global Assessment of Functioning (GAF) scale score of 45, indicating some serious symptoms related to social and occupational functioning. (Tr. 274). Dr. Lambert adjusted Plaintiff's medical regimen, instructed Plaintiff to continue her weekly counseling at the Center, and noted she and her staff needed to discuss Plaintiff's alcohol use and possible alcohol abuse/dependence and possible need for treatment. (*Id.*). Dr. Lambert also noted that she and her staff needed to discuss with Plaintiff her need to abstain from alcohol, particularly with medication. (*Id.*). Plaintiff continued with her counseling and medication management at the Center through July 2009. (Tr. 233-316).

In late May 2007, state agency reviewing psychologist, Aracelis Rivera, Psy.D., reviewed Plaintiff's record and opined that Plaintiff did not have any severe impairments. (Tr. 201). In August 2007, state agency reviewing psychologist Katherine Lewis, Psy.D., reviewed the record and concurred with Dr. Rivera's assessment; Dr. Lewis noted Plaintiff had a mental impairment exacerbated by alcohol use. (Tr. 228).

In June 2007, Plaintiff reported to Dr. Lambert that she drank to forget her problems. (Tr. 265). She indicated she drank daily. (Tr. 266). Her diagnoses of ruling out alcohol abuse and depression was noted. (*Id.*). In July 2007, Plaintiff reported she drank to feel calm at night; she reported she was calm during the day, but "wired" at night. (Tr. 263). In August 2007, Plaintiff

reported a confrontation with her son-in-law; she indicated she drank four beers prior to going to bed the night before and was unable to sleep, waking up every two to three hours. (Tr. 260-61). Dr. Lambert discussed with Plaintiff how her alcohol use could be affecting her sleep; Plaintiff was advised not to drink. (Tr. 261). Later in August 2007, Plaintiff admitted she was still drinking, reporting that every two to three days, she had two to three beers. (Tr. 257). Dr. Lambert again explained to Plaintiff that her drinking could be making her insomnia worse and made Dr. Lambert more hesitant to issue certain medications to treat her depressive symptoms. (*Id.*).

In August 2007, Plaintiff's treating physician, Candace Zubricky, M.D., completed a mental status questionnaire, at the request of the state agency. (Tr. 216-18). Dr. Zubricky reported Plaintiff was tearful, emotional, depressed, and paranoid. (Tr. 216). With respect to her insight and judgment, Dr. Zubricky described Plaintiff's daily alcohol use (four to six beers). (*Id.*). Dr. Zubricky noted diagnoses of Major Depressive Disorder with Psychotic Features, R/O Bi-Polar Disorder, and R/O Alcohol Dependence. (Tr. 217). She noted Plaintiff had a fair ability to maintain attention and remember, understand, and follow directions; but that she would not be able to complete tasks in a timely fashion. (*Id.*). Dr. Zubricky opined Plaintiff would be incapable of managing benefits should they be granted. (Tr. 218).

Later in August 2007, Dr. Lambert completed an assessment of Plaintiff's ability to perform mental work-related activities. (Tr. 222-23). Dr. Lambert opined Plaintiff had a good ability to interact with supervisors, to follow work rules, and to use judgment; fair ability to relate to co-workers, deal with the public, function independently, and maintain attention/concentration; and a poor ability to deal with work stresses. (Tr. 222). Dr. Lambert noted Plaintiff was unable to maintain recent employment due to poor attendance. (Tr. 222-23). Dr. Lambert further noted

5

Plaintiff had a fair ability to understand, remember, and carry out complex and detailed job instructions, and a good ability to understand, remember, and carry out simple job instructions. (Tr. 223). She believed Plaintiff had a fair ability in behaving in an emotionally stable manner, relating predictably in social situations, and in demonstrating reliability. (*Id.*). Dr. Lambert also noted Plaintiff's anxiety, depression, paranoia, and hallucinations were interfering with her concentration. (*Id.*).

Also in August 2007, social worker Jean Serkownek completed the same assessment of Plaintiff's ability to perform mental work-related activities. (Tr. 226-27). Ms. Serkownek opined Plaintiff had an unlimited/very good ability in following work rules; a good ability in dealing with the public, using judgment, and interacting with supervisors; a fair ability in relating to co-workers and functioning independently; and a poor ability in dealing with work stresses and in maintaining attention/concentration. (Tr. 226). Ms. Serkownek opined Plaintiff had a fair ability in understanding, remembering, and carrying out simple job instructions, but had a poor ability to understand and carry out complex or detailed job instructions because she "has to write everything down". (*Id.*). Ms. Serkownek further opined Plaintiff had a fair to poor ability to behave in an emotionally stable manner and a poor ability to relate predictably in social situations and in demonstrating reliability. (Tr. 227).

In September 2007, Plaintiff reported to Dr. Lambert she recently had a medical procedure where she had to fast for eight hours, during which it took her four hours to fall asleep. (Tr. 252). Plaintiff reported she was currently not drinking, and she was trying to quit drinking; she noted she last drank four days prior. (*Id.*). She reported she drank five days in the previous three weeks. (*Id.*). But she indicated she didn't want to go to Alcoholics Anonymous. (*Id.*). In October 2007, Plaintiff

reported she liked working with an elderly sick man, and it made her appreciate things more. (Tr. 247). In November 2007, Plaintiff reported she was not drinking much and her sleep and mood were okay. (Tr. 246). She reported she was still helping an elderly lady and a man with cancer. (*Id.*). In February 2008, Plaintiff admitted she was drinking three days per week. (Tr. 240). In March 2008, Plaintiff stated she was not drinking that much and felt speeded up with racing thoughts. (Tr. 237). But she admitted to drinking coffee at 10:00 P.M. (*Id.*). In April 2008, Plaintiff reported she had not been drinking and she felt she was doing okay. (Tr. 235). However, because Plaintiff reported some domestic violence at home, Dr. Lambert advised Plaintiff to discuss the situation further with her counselor. (*Id.*). In May 2008, Plaintiff reported more domestic violence at home, but also reported she was cutting back on her drinking and her sleep was good. (Tr. 234).

In early June 2008, Plaintiff admitted to her counselor at the Clinic that she believed she was an alcoholic. (Tr. 233). The next day, Plaintiff admitted herself to St. Vincent Charity Hospital for alcohol detox; she reported she wanted a new lifestyle. (Tr. 358). Plaintiff was described as an alcoholic, drinking a twelve-pack of beer daily. (Tr. 351). Plaintiff reported alcohol had caused her a lot of harm and she believed it was important to get treatment for her alcohol problems. (Tr. 361-62). She was assessed as resistant to treatment because she refused the next level of care. (Tr. 362). She was also noted to lack sober supports; her live-in boyfriend used alcohol and drugs. (Tr. 359, 362). Plaintiff acknowledged that her alcohol abuse was causing her problems with thinking and in doing her work. (Tr. 362). She was treated and released in good condition on June 14, 2008 and advised to follow up with Alcoholics Anonymous meetings. (Tr. 347). Plaintiff's family reported that she began drinking beer after her discharge. (Tr. 313).

Also in June 2008, Plaintiff reported that her boyfriend had threatened to kill her. (*Id.*). He

had been threatening her and she "snapped", went upstairs, and cut up all of his clothes with a steak knife. (Tr. 311). She reported that she could not handle it and went to detox. (*Id.*). Plaintiff was admitted to Genesis Healthcare for having suicidal thoughts with numerous life stressors. (Tr. 318). On admission, she reported her boyfriend was verbally and physically abusive toward her, and she broke up with him the day before, after he almost beat her to death. (*Id.*). She also reported she lost the home she had lived in for 30 years. (*Id.*). The attending physician noted Plaintiff did "pretty well" once she got to the hospital. (*Id.*). She was discharged after two days. (*Id.*).

In July 2008, Plaintiff presented to a mental health clinic in her parents hometown of Zanesville, Ohio, where psychiatrist Stewart Fern evaluated her. (Tr. 330). Plaintiff reported her recent history of being admitted for detox due to suicidal ideation on account of the great deal of stress she was under. (*Id.*). Plaintiff demonstrated no psychotic symptoms and was pleased with her current medication regimen. (*Id.*). Plaintiff reported she had not had a drink in three weeks. (*Id.*). Dr. Fern diagnosed her with Adjustment Disorder with Mixed Disturbance of Emotion and Conduct and Alcohol Dependence. (*Id.*). He assessed her as having a GAF scale score of 65, which was indicative of only some mild symptoms. (Tr. 331). Earlier in June 2008, Plaintiff had reported she was not in the labor force due to having just moved to the neighborhood, despite having the ability to check a box indicating disability as the reason for her unemployment. (Tr. 336).

In late July 2008, Plaintiff reported to Dr. Lambert that she had stopped drinking and was living with her family. (Tr. 312). She reported sleeping better and eating more. (*Id.*). She reported she had one beer two days prior and that she had not been to Alcoholics Anonymous, but she did think she had an alcohol problem in the past (though not now). (*Id.*). However, Dr. Lambert noted alcohol had caused Plaintiff problems. (*Id.*). Dr. Lambert noted Plaintiff was not depressed or

agitative, and was very appreciative. (*Id.*).

In August 2008, Plaintiff reported she was staying with her daughter, but it was stressful for her when her daughter left her to watch her three young children. (Tr. 317). She reported she was talking to her ex-boyfriend and her mood was depressed. (*Id.*). She also reported she would drink when she was stressed. (Tr. 310).

In mid-October 2008, Plaintiff reported to Dr. Lambert that she was still living with her daughter and her daughter's three children, but it was stressful for her to watch the three kids all the time. (Tr. 305). She reported she had not been drinking that much, occasionally having a few glasses of wine. (*Id.*).

In November 2008, Plaintiff reported living with her brother. (Tr. 304). She reported she was not drinking very much; her mood was more mellow; her sleep was "pretty good"; and she was not hearing things. (*Id.*).

In December 2008, Plaintiff reported she had moved to her own place and she was excited about that. (Tr. 303). She made no reports of alcohol use, and Dr. Lambert observed Plaintiff to be pleasant, not agitated, not desperate, and with no suicidal ideation. (*Id.*).

In early January 2009, Plaintiff reported to Dr. Lambert that she had been crying all night because she was upset with her son-in-law. (Tr. 302). But she was glad to have her own place. (*Id.*). She indicated she never went to the alcohol abuse assessment, but was considering Alcoholics Anonymous. (*Id.*). In February 2009, Plaintiff reported she had been sober for one month, but was worried about her daughter and her daughter's children. (Tr. 300). In March 2009, Plaintiff reported that things were going "ok" with her family and that she was backing away from her boyfriend. (Tr. 298). She reported he had hit her while she was driving; she reported she got out

9

of the car. (*Id.*). Plaintiff also reported she was still hearing music. (*Id.*).

In mid-May 2009, Plaintiff reported that since she had been on Ambien, things were "ok" with her boyfriend. (Tr. 295). Dr. Lambert observed Plaintiff was not agitated, not desperate, and had no suicidal or homicidal ideation. (*Id.*). In June 2009, Plaintiff admitted to Dr. Lambert she was drinking. (Tr. 293). Plaintiff reported some memory loss. (*Id.*). She reported she had her ups and downs with her family, but was not agitated, not desperate, and demonstrated no suicidal or homicidal ideation. (*Id.*). In July 2009, Plaintiff reported she was working on getting Social Security benefits. (Tr. 292). Plaintiff reported not drinking like she used to, and that she had trouble sleeping. (*Id.*).

In August 2009, Plaintiff's counselor Jean Serkownek completed another assessment of Plaintiff's abilities to perform work-related mental activities. (Tr. 324-25). In this assessment, Ms. Serkownek opined that Plaintiff had a good ability in following work rules; a fair ability in relating to co-workers, dealing with the public, and interacting with supervisors; a poor ability in using judgment and dealing with work stresses; and, at times, had limitations with maintaining attention and concentration. (Tr. 324). Ms. Serkownek further opined that Plaintiff had a "good ability" in understanding, remembering, and carrying out complex, detailed, and simple job instructions. (Tr. 325). Ms. Serkownek also said Plaintiff had a good ability in demonstrating reliability, but a poor ability to behave in an emotionally stable manner and to relate predictably in social situations. (*Id.*).

Also in August 2009, Plaintiff's treating psychiatrist, Dr. Lambert, completed an assessment of Plaintiff's ability to perform work-related mental activities. (Tr. 327-28). Dr. Lambert opined that Plaintiff had a good ability to follow work rules; a fair ability to relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, and function

10

independently. (Tr. 327). Dr. Lambert opined that Plaintiff had a good ability to maintain attention and concentration. (*Id.*). Dr. Lambert further opined that Plaintiff had a very good ability in understanding, remembering, and carrying out simple job instructions and a good ability to understand, remember, and carry out complex and detailed job instructions. (Tr. 328). Dr. Lambert also said that Plaintiff had a good ability in demonstrating reliability, and a fair ability to behave in an emotionally stable manner and to relate predictably in social situations. (*Id.*).

## Standard of Review

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## Standard of Disability

Eligibility for SSI and DIB is predicated on the existence of a disability. 42 U.S.C. § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## Discussion

Plaintiff presents a single argument against the ALJ's denial of benefits: that the ALJ erred

by finding Plaintiff's alcohol abuse to be a material and contributing factor to his disability analysis.

An individual cannot receive disability benefits under 42 U.S.C. § 423 if alcoholism or drug addiction would be a "contributing factor material" to the disability analysis. 42 U.S.C. § 423(d)(2)(C); 42 U.S.C. § 1382c(a)(3)(J). In making the disability determination, the ALJ must consider all evidence in the case record and develop a complete medical history of at least the preceding twelve months. 42 U.S.C. § 423(d)(5)(B). The key factor to examine in determining whether drug or alcohol abuse is a material contributing factor is whether the individual would qualify as disabled if the drug or alcohol abuse ceased. 20 C.F.R. § 404.1535(b)(1). If the remaining limitations would not be disabling, then the drug or alcohol abuse is a contributing factor and the individual will not receive SSI benefits. *Id.* § 404.1535(b)(2)(i). In making the determination, the ALJ must evaluate the individual's current physical and mental limitations. Then the ALJ must determine whether those limitations would exist without drug or alcohol abuse. *Id.* § 404.1535(b)(2).

Plaintiff alleges the impact of her alcohol abuse was indistinguishable from the impact of her depression and, therefore, the ALJ erred by finding her alcohol abuse to be a material and contributing factor to his disability analysis. (Doc. 16, at 9-10).

Plaintiff argues that the record shows her symptoms persisted or worsened during times when she ceased drinking. (*Id.*, at 11). However, the instances Plaintiff cites to in the record do not bear this out. For example, when Plaintiff was admitted to the hospital for suicidal ideation in June 2008, shortly after her detox earlier in the month, Plaintiff had numerous life stressors leading to that hospitalization, including that her verbally and physically abusive live-in boyfriend had almost beat her to death, causing her to break up with him the day before. (Tr. 318). She also had recently lost her home of 30 years. (*Id.*). Once she was admitted, she did well and was discharged two days later.

13

(*Id.*). Also, Plaintiff's reference to her reporting that she was feeling "speeded up" despite not drinking in March 2008 does not include the doctor's notation that Plaintiff was drinking coffee at 10:00 P.M. (Tr. 237). Finally, Plaintiff points to the fact that in July 2009 she was still very depressed while "not drinking like she used to", but the July 2009 office note reports Plaintiff was feeling "a little blue" because she was worried about her Social Security disability application. (Tr. 292).

An ALJ needs only substantial evidence to support his findings to avoid remand. *Walters*, 127 F.3d at 528. Here, there is sufficient evidence in the record to indicate Plaintiff's alcohol abuse is a material component of her impairments. As the ALJ noted, during periods of sobriety and periods of decreased alcohol consumption, Plaintiff showed a correlating decrease in her symptoms. (Tr. 19). For example, when Plaintiff was not drinking in November 2007, her sleep and mood were "ok" and she was helping to care for an elderly woman and man with cancer. (Tr. 246). In April 2008, Plaintiff was not drinking and indicated she felt she was doing "ok". (Tr. 235). In May 2008, Plaintiff reported she was not drinking and her sleep was good. (Tr. 234). In July 2008, Plaintiff reported to Dr. Stewart she had not been drinking, and after evaluating her, Dr. Stewart assessed Plaintiff as having a GAF scale score of 65, which was indicative of only some mild symptoms (Tr. 330-31), and better in contrast to Plaintiff's previous GAF scale score of 45 assessed by Dr. Lambert during a period when Plaintiff reported she had been drinking (Tr. 274). Finally, in November 2008, Plaintiff indicated she was not drinking much and her mood was more mellow, her sleep was pretty good, and she was not hearing things. (Tr. 304). All of these examples provided the ALJ with substantial evidence to conclude that when Plaintiff was not drinking, her symptoms improved. (Tr. 19). In other words, the ALJ had substantial evidence to conclude that if Plaintiff stopped abusing

alcohol, she would not be disabled and that her alcohol abuse was a material and contributing factor to a disability determination. (Tr. 20).

## Conclusion and Recommendation

Following review of the arguments presented, the record, and applicable law, this Court finds the Commissioner's decision denying DIB and SSI benefits supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

s/James R. Knepp II<br>
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).